AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT

2019 APR 25 AM 10: 13

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>BLACK/GOLD LG Cellphone, Model<br>LG-SP200,Serial:809VTFW1427475, CURRENTLY<br>LOCATED AT ATF COLUMBUS FIELD OFFICE | Case No. 2:19 mj 331 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ___Southern___ District of ___Ohio___ *(identify the person or describe property to be searched and give its location)*: BLACK/GOLD LG Cellphone, Model LG-SP200,Serial:809VTFW1427475, CURRENTLY LOCATED AT ATF COLUMBUS FIELD OFFICE

See Attachment A, incorporated herein.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___21___ U.S.C. § ___841(a)___, and the application is based on these facts: The search is also related to a violation of 18 U.S.C. 924(c) (1), and the application is based on these facts: See Affidavit in Support of Application, incorporated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature
ATF SA, 6134

Colin J. Ginley, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4-25-19

_____
Judge's signature

City and state: Columbus, Ohio

Chelsey M. Vascura U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Colin J. Ginley, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search a black/gold LG Cellphone, Model LG-SP200, Serial#: 809VTFW1427475 smartphone, ATF Property #000005, located inside ATF Columbus Field Office Vault, FC-1, hereinafter "Device" which is currently stored in law enforcement possession at 230 West Street, Suite #300, Columbus, Ohio 43215, for certain things particularly described in Attachment A.

2. I am a Special Agent (SA) with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since May 14, 2018. Therefore, I am a law enforcement officer as defined in 18 U.S.C. §2510(7). I am presently assigned to the ATF Columbus Field Division. I completed the Criminal Investigator Training Program and the ATF Special Agent Basic Training Academy at the Federal Law Enforcement Training Center, located in Glynco, Georgia, where I received specialized training in the investigation of federal crimes involving firearms, alcohol and tobacco diversion, arson and explosives, and narcotics. Prior to being employed with ATF as a Special Agent, I was employed with the City of Cleveland as a Patrol Officer and Detective. More specifically, from 2013 through 2018 I was assigned as a Detective to the Bureau of Special Services in the Gang Impact Unit. Additionally, in 2014, I worked as a Task Force Officer (TFO) with ATF during Operation Gideon.

3. In addition to my experience as a Special Agent with ATF, through my prior employment as a Cleveland Police Detective assigned to ATF, I have participated in federal

investigations involving the distribution of controlled substances as well as federal firearms violations. During these investigations, I participated in various types of investigative techniques, to include electronic surveillance, informants, and controlled purchases of firearms and narcotics from suspects. I participated in physical surveillance operations and in the execution of multiple federal arrest warrants. I also know how to analyze information resulting from traditional record searches, reviewing case files, and information obtained from cell phone extraction reports. As a result of my training and experience, I am familiar with state and federal laws pertaining to firearms and narcotics violations, among other offenses.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

1. On or about March 27th, 2019, an ATF CI advised S/A Ginley that he/she personally observed SUBER in possession of multiple firearms including but not limited to: a Taurus PT111 9mm semi-automatic handgun, while inside 137 Whitethorne Avenue, Columbus, Ohio while crack cocaine was being prepped for distribution by SUBER.

2. On or about March 27th, 2019 an ATF CI advised S/A Ginley that this is when he/she first observed SUBER's facebook profile of https://www.facebook.com/mg.yacc displaying numerous photos of SUBER possessing the same firearm inside 137 Whitethorne Avenue. ATF CI advised S/A Ginley that this was the same firearm that ATF CI had previous brought to the attention to SA Ginley on March 26th, 2019. In one of the particular aforementioned photos SUBER is observed with Nermiah JOHNSON on his lap inside 137 Whitethorne Avenue. The photograph displays suspected narcotics

while SUBER is holding a firearm. More specifically, SUBER and JOHNSON are in the photograph next to a table containing several clear baggies containing suspected narcotics, a green bag, a digital scale, and an iphone.

3. On or about April 1st, 2019, ATF CI communicated to S/A Ginley that he/she again personally observed SUBER in possession of multiple firearms including but not limited to: the previously mentioned Taurus PT111 9mm semi-automatic handgun, while inside 137 Whitethorne Avenue, Columbus, Ohio and that "they cookin dope". The ATF CI elaborated "they" as SUBER, JOHNSON, and another unknown individual.

4. On or about April 2nd, 2019 SA Ginley conducted surveillance of 137 Whitethorne Avenue, Columbus Ohio. SA Ginley observed the rear door being utilized as the main entrance to the residence. SA Ginley also observed multiple outdoor security cameras.

5. On or about April 3rd, 2019, ATF CI communicated to S/A Ginley that he/she again personally observed SUBER in possession of multiple firearms including but not limited to: the previously mentioned Taurus PT111 9mm semi-automatic handgun, while inside 137 Whitethorne Avenue, Columbus, Ohio, while crack cocaine was being prepped for distribution by SUBER.

6. On or about April 4th, 2019, the CI contacted SUBER and arranged for the purchase of an amount of crack cocaine from SUBER. The CI advised SA Ginley that SUBER was currently at 137 Whitethorne Avenue, Columbus Ohio. ATF Special Agent Ginley and

5D

Columbus Division of Police (CPD) Task Force Officer (TFO) Chappell drove the CI to this location. ATF CI was checked for contraband on his/her person which revealed negative results and provided pre-recorded Government funds. SA Ginley observed the CI walk up to the rear of 137 Whitethorne Avenue and subsequently enter the rear door, identified as 137 Whitethorne Avenue, Columbus Ohio. The CI purchased an amount of crack cocaine from SUBER with pre-recorded Government funds. The CI returned to Special Agent Ginley and TFO Chappell, and provided S/A Ginley with a baggie of suspected crack cocaine. ATF CI was again checked for contraband on his/her person which revealed negative results. This transaction was video and audio recorded but the device malfunctioned during the course of the transaction. The ATF CI advised SA Ginley that he/she received a phone call just prior to entering the residence of 137 Whitethorne Avenue to confirm the drug amount. This phone call was from SUBER's cell phone number and involved both SUBER and JOHNSON on the phone. ATF CI also advised SA Ginley that he/she then knocked and entered the residence of 137 Whitethorne Avenue from the rear door and purchased the narcotics from SUBER. The ATF CI advised SA Ginley that he/she observed SUBER with a semi-automatic firearm on his person while he packaged up the suspected crack cocaine. JOHNSON was also present during the transaction. Your affiant watched and listened to the audio/video regarding the narcotics transaction between the CI and SUBER and confirmed the device malfunction. The audio and video leading up to transaction was consistent with the description of the transaction as described by the CI. SA Ginley also reviewed and captured the phone call placed by SUBER to ATF CI that occurred moments before ATF CI approached 137 Whitethorne Avenue. SUBER calls ATF CI to reconfirm

his/her drug amount. The ATF CI controlled purchase from SUBER was field tested utilizing a Scott Reagent System Modified cocaine testing kit. The field tested resulted in a positive test for cocaine.

7. On or about April 8th, 2019, your affiant conducted surveillance at 137 Whitethorne Avenue, Columbus Ohio and observed foot traffic related to narcotic activity at the rear door of the residence.

8. On April 9th, 2019 SA Ginley drafted a residential search and seizure warrant for 137 Whitethorne Avenue Columbus, Ohio 43223. Subsequently, SA Ginley went before the Honorable United States Magistrate Judge Elizabeth Preston Deavers where the warrant was sworn, signed and filed, Case No. 2:19-mj-276.

9. On April 11th, 2019 at approximately 9:53 a.m. the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Columbus Field Division, Columbus Field Office along with the assistance of the Columbus Division of Police (CPD) SWAT Unit executed the Federal Search and Seizure Warrant, Case No 2:19-mj-276 at the location of 137 Whitethorne Avenue, Columbus, Ohio 43223.

10. As CPD SWAT officers made entry through the rear entrance to the residence, CPD SWAT observed Chaison SUBER, Nermiah JOHNSON, Ciera WEBB, Michael BAILEY, and Rebecca MILLER located inside 137 Whitethorne Avenue, Columbus, Ohio.

11. Multiple items were recovered inside the residence of 137 Whitethorne Avenue Columbus, Ohio 43223 including but limited to: a black, Taurus, Millennium, 9mm semi-automatic handgun, serial#: TKO77524, approximately 25.82 grams of methamphetamine, 19.79 grams of crack cocaine, 6.62 grams of black tar heroin, 6.39

grams of powder cocaine, a Black/Gold LG Cell Phone "Device", a New England Arms Co. Pardner Model SB1 .410 Gauge Shotgun, Serial#:NF246369, and a Sig Sauer, Model Mosquito, .22caliber pistol, serial#: F340007 w/ attached light.

12. Various other items indicative of drug trafficking were observed within 137 Whitethorne Avenue and subsequently photographed.

13. The black/gold LG Cell Phone, Model LG-SP200, Serial#: 809VTFW1427475 "Device" was in close proximity to the aforementioned firearms, suspected narcotics, and drug trafficking materials.

14. Your Affiant interviewed JOHNSON in regards to her location inside 137 Whitethorne Avenue. JOHNSON stated to SA Ginley that she was on the first floor, in the rear room, sleeping on the black mattress with Chaison (SUBER).

15. Your Affiant asked JOHNSON if her DNA would be on the guns that were recovered inside the residence and she reluctantly responded by saying yes. Towards the end of the interview, JOHNSON asked SA Ginley if she could get her brown Louis Vuitton purse and blue bag from inside the residence located in the rear room before she left. SA Ginley advised JOHNSON that her request would not be met. It should be noted that the blue bag JOHNSON requested contained the green bag which contained the aforementioned narcotics. Additionally, JOHNSON made a request to SA Ginley if she could have her phone back and visually indicated the "Device" on scene at 137 Whitethorne Avenue. It should be noted that JOHNSON gave CPD P.O. Dunham and TFO Orick verbal consent to search through her phone but a search was not conducted.

16. Your affiant was advised by JOHNSON that she uses the Device to communicate with SUBER and would therefore need it.

17. Your affiant has observed a photograph of SUBER with JOHNSON on his lap inside 137 Whitethorne Avenue. The photograph displays suspected narcotics while SUBER is holding a firearm. More specifically, SUBER and JOHNSON are in the photograph next to a table containing several clear baggies containing suspected narcotics, a green bag, a digital scale, and an iphone.

18. Your affiant received information that the previously described photograph was posted to a social media account.

19. Your Affiant knows from his training and experience criminals use their cellphones to communicate via phone call, text messages and social media in order to set up illegal drug sales or meet for criminal activity. Your affiant knows from his training and experience that criminals will use their cellphones to take photos of themselves or others while performing illegal activities. The criminals will post the pictures to social media accounts. Criminals will also save the photos to show other people.

20. The Device is currently in the lawful possession of the ATF. It came into ATF's possession in the following way: On April 11th, 2019 at approximately 9:53 a.m. the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Columbus Field Division, Columbus Field Office along with the assistance of the Columbus Division of Police (CPD) SWAT Unit executed the Federal Search and Seizure Warrant, Case No 2:19-mj-276 at the location of 137 Whitethorne Avenue, Columbus, Ohio 43223. JOHNSON's cell phone was taken into custody at that time and has been in law enforcement custody since that time. ATF continued investigating SUBER and

JOHNSON as armed drug traffickers pursuant to the evidence recovered from the Federal search warrant at 137 Whitethorne Avenue, Columbus, Ohio 43223.

21. The Device is currently in storage at 230 west Street, Suite #300, Columbus, Ohio. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state, as they were when the Device first came into the possession of the ATF.

## TECHNICAL TERMS

22. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones now offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.

Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a device that records still and moving images digitally. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store any digital data, such as word processing documents, even if the device is not designed to access such files. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions

to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive email. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device. ·

    g.    IP Address: An Internet Protocol address ( or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97 .178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static-that is, long-term-IP addresses, while other computers have dynamic-that is, frequently changed-IP addresses.

    h.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

23. Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC DEVICES AND STORAGE

24. As described above and in Attachment A, this application seeks permission to search and seize things that the Device might contain, in whatever form they are stored. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Even when a user deletes information from a device, it can sometimes be recovered with forensics tools. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

25. Searching for the evidence described in Attachment A may require a range of data analysis techniques. In some cases, agents and computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law-enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in Attachment A, or perusing all stored information briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, the ATF intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment A.

## CONCLUSION

26. I submit that this affidavit supports probable cause for a warrant to search the Device and seize the items described in Attachment A.

## REQUEST FOR SEALING

27. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organization as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

_____ ATF SA 6134
Colin J Ginley
Special Agent
Bureau of Alcohol, Tobacco, Firearms
and Explosives

Subscribed and sworn to before me on the 25 day of April, 2019.

_____
Chelsey M. Vascura, U.S. Magistrate Judge

## ATTACHMENT A

(1) one black/gold LG Cellphone, Model LG-SP200, Serial#: 809VTFW1427475, ATF Property #000005, located inside ATF Columbus Field Office vault, FC-1 (hereinafter "Device"), that relates to violations of the statutes listed on the warrant and involve Nermiah Johnson and Chaison Suber since April 1st, 2019.





## ATTACHMENT B

1. The items to be seized are:

    a. Identities of any other individual who are involved in trafficking in drugs and while possessing a firearm in furtherance of trafficking;

    b. lists of or evidence indicating anyone else and/or locations while trafficking in drugs and while possessing a firearm in furtherance of trafficking;

    c. items received and amounts of US currency that were obtained while trafficking in drugs and while possessing a firearm in furtherance of trafficking;

    d. any information related to trafficking in drugs and information related to possessing a firearm in furtherance of trafficking;

    e. any information recording Chaison Suber and/or Nermiah Johnson's schedule or travel from April 01, 2019 to the present;

    f. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Records and things evidencing the use of the Internet Protocol address

    a. records of Internet Protocol addresses used;

    b. records of Internet activity, including firewall logs, caches, browser history and i

    cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

4. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.